# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JAMES PHELPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 11-1212-JWL |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding error in the Commissioner's evaluation of the treating source opinions of Dr. Garner, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.    Background

Plaintiff applied for SSI on September 6, 2005, alleging disability beginning August 1, 2001.  (R. 17, 160-64).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge

(ALJ).  (R. 17, 37-38, 64-66).  Plaintiff's request was granted, and after a hearing, ALJ

Christine A. Cooke issued her first decision on March 14, 2006.  (R. 42-49).  The Appeals

Council granted Plaintiff's request for review of ALJ Cooke's first decision, and

remanded the case for further proceedings and further development of the record---

primarily with regard to Plaintiff's mental impairments.  (R. 32-36, 94-119).  On remand,

ALJ Cooke updated the record, secured a consultative psychological evaluation and

report, and held two supplemental hearings.  (R. 84-145, 185-91, 286-90, 502-603, 608-

18, 646-66).  At the supplemental hearings, Plaintiff was represented by counsel and

testimony was taken from Plaintiff, from a medical (psychological) expert, and from a

vocational expert.  (R. 608-18, 646-66).

On September 13, 2010, ALJ Cooke issued another decision in this case, finding

that Plaintiff has a severe combination of impairments including bipolar disorder with

depressed mood, substance abuse in alleged remission, back pain, and history of back

injury, but that the impairments do not meet or equal the severity of an impairment listed

in the Listing of Impairments.  (R. 30).  The ALJ found that Plaintiff's allegations of

symptoms are not credible and that he has the residual functional capacity (RFC) for a

limited range of light work, further limited by his mental impairments to job duties which

are simple, repetitive, routine, and low in stress, which require no contact with the general

public and only occasional contact with coworkers and supervisors, and where personal

supervision is not constant.  Id. The ALJ found that although Plaintiff is unable to

perform his past relevant work, when his age, education, work experience, and RFC are

2

considered, there are a significant number of other jobs available in the economy which he can perform.  (R. 31).  Consequently, she determined that Plaintiff is not disabled within the meaning of the Act, and denied his application for SSI.  Id.

Once again, Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a brief detailing five errors he believed appear in ALJ Cooke's second decision. (R. 12-13, 604-07).  The Appeals Council issued an order making Plaintiff's brief a part of the administrative record (R. 11), but found no basis in the brief and no reason under the rules of the Social Security Administration (SSA) to review the ALJ's decision, and denied Plaintiff's Request for Review.  (R. 8-10).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d  903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and

3

whether the ALJ applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084

(10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  <u>Wall</u>, 561 F.3d at

1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman v.

Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health &

Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

<u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

    An individual is under a disability only if that individual can establish that he has a

physical or mental impairment which prevents him from engaging in any substantial

gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months.  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, <u>Knipe v. Heckler</u>, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A)); <u>accord</u>, <u>Lax</u>, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id. The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform his past relevant work; and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in failing to include back pain and headaches as severe impairments; erred in weighing the medical opinions of Plaintiff's treating physician, Dr. Garner; erred in failing to link the RFC assessment to any of the medical evidence; and erred in making the credibility determination.  The Commissioner argues that substantial evidence supports the finding that back pain and headaches are not severe in this case; that although the ALJ did not specify the weight given each limitation assessed by Dr. Garner, he properly considered and discussed Dr. Garner's opinions; that a pinpoint citation to medical evidence is not required for each RFC limitation assessed; and that substantial evidence supports the ALJ's credibility determination.  The court finds that the ALJ erred in weighing the treating source medical opinions of Dr. Garner. Consequently, remand is necessary for the Commissioner to properly weigh the medical opinions.  Therefore, the court will not address the remaining errors alleged by Plaintiff. Plaintiff may make his arguments in that regard before the Commissioner on remand.

## III.  Evaluation of Dr. Garner's Medical Opinions

Plaintiff claims the ALJ erred in evaluating the treating source medical opinions of Dr. Garner.  Specifically, he argues that the ALJ did not properly evaluate Dr. Garner's medical opinion regarding limitations resulting from Plaintiff's mental impairments because she did not explain the weight she assigned the opinion and did not give specific, legitimate reasons for rejecting the opinion completely.  (Pl. Br. 14).  Considering Dr.

6

Garner's medical opinion regarding physical limitations, Plaintiff argues that the ALJ did not address that opinion at all.  Id.  Plaintiff argues that the ALJ did not discuss the regulatory factors for weighing medical opinions and did not consider what less-than-controlling weight should be accorded Dr. Garner's opinions.  Id. at 15.

The Commissioner argues that the ALJ properly considered and discussed Dr. Garner's medical opinions.  (Comm'r Br. 12).  With regard to the physical limitations opined by Dr. Garner, he argues that the ALJ concluded that Plaintiff's exertional capacity was more limited that Dr. Garner opined, and that the ALJ properly explained her determination to accord "little weight" to Dr. Garner's opinion that Plaintiff must lie down during an eight-hour workday.  Id. at 12-13.  Regarding the mental limitations opined by Dr. Garner, the Commissioner acknowledges that the "ALJ did not specify the amount of weight given to each of Dr. Garner's assessed limitations," but argues that "the ALJ articulated sufficient reason for rejecting the limitations that were not consistent with the [ALJ's] RFC finding."  Id. at 13-14.

## A.    Standard for Evaluating Treating Source Opinions

As Plaintiff argues, medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with certain factors contained in the regulations.  20 C.F.R. § 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2011).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.' "  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id. Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the

8

ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir.1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987)).  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  Goatcher, 52 F.3d at 289-90 (citing Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988) (brackets and quotation marks omitted)).

**B.      The ALJ's Discussion Regarding Dr. Garner's Opinions**

At three different points in her decision the ALJ discussed Dr. Garner's opinions, and the court reproduces each discussion here:

> It is noted that a Medical Source Statement (Physical) form was completed by Dr. Garner at the Cotton O'Neil Clinic in October 2007 (Exhibit 12F/l-2 [(R. 476-77)]).  Dr. Garner, at that time, stated that claimant was able to lift up [to] 50 pounds occasionally and 25 pounds frequently, stand and walk up to 8 hours total in an 8-hour workday, and sit up to 8 hours total in an 8-hour workday.  It was further noted that claimant could occasionally balance, stoop, kneel, crouch and crawl and frequently climb, reach and handle.  Claimant, according to that report, should avoid concentrated exposure to extreme cold, wetness/humidity, dust/fumes, vibration and heights, and avoid moderate exposure to extreme heat and hazards.  Dr. Garner was somewhat unclear as to claimant's need to lie down or recline to alleviate symptoms during an 8-hour workday.  He showed that claimant would be required to lie down as often as 1 hour and showed a duration for this of 10 minutes (Exhibit 12F/3 [(R. 478)]).

> The record, overall, points to no severe physical impairment for claimant. As noted previously, there is minimal medical treatment for claimant with respect to his physical complaints during the period at issue, and the physical examination findings have been essentially benign.  Accordingly, and based on the above, the undersigned finds that there is no reason for claimant to lie down at all during an 8-hour workday because of his alleged

9

physical symptoms, and therefore, Dr. Garner's comments and opinion with respect thereto are being given little weight.

(R. 22).

It is also noted that when claimant was seen by Dr. Steven Garner at Cotton O-Neil Clinic in January 2007, he was reported to have mild depression (Exhibit 7F/15 [(R. 417)]).

(R. 15).

It is noted that a Medical Source Statement (Mental) was completed by Dr. Garner on October 15, 2007 (Exhibit 11F/2-3 [(R. 474-75)]). As noted in the medical expert's testimony, this assessment by Dr. Garner showed mostly "not significantly limited" to "moderately limited" for claimant in the various areas of functioning.

(R. 26).

At the last supplemental hearing, the ALJ called upon a medical expert, a

psychologist, Dr. Kravitz, to testify regarding his expert opinions formulated after

reviewing the record medical evidence. (R. 650-56). The ALJ discussed Dr. Kravitz's

testimony and opinions in the decision. (R. 22-24). Here is the ALJ's discussion of Dr.

Kravitz's testimony as it relates to Dr. Garner's opinions:

Dr. Kravitz also referred to the Medical Source Statement completed in October 2007 and marked as Exhibit 11F [(R. 473-75)], which showed claimant to be functioning in more the "moderate" range. Accordingly, Dr. Kravitz stated that he balanced the evidence of record to come up with his assessment of limitations on the Psychiatric Review Technique form. Regarding vocational limitations, arising from claimant's "moderate" limitation in social functioning and in maintaining concentration, persistence and pace, Dr. Kravitz opined that claimant would not be able to follow through with complex or detailed job instructions on a consistent basis and therefore would be limited to short and simple job instructions.

Herein, he indicated that he would not place claimant in a work environment which required strict production quotas. With respect to social functioning, Dr. Kravitz noted that the record showed varying levels of severity for claimant in this area of functioning by several medical sources of record. Overall, Dr. Kravitz testified that based on claimant's bipolar symptoms, his pain, irritability and racing thoughts, according to the record, claimant would be limited to brief and superficial interaction with co-workers, supervisors and the general public, with no constant supervision throughout an 8-hour work, which would be overwhelming to claimant.

When asked whether he believed there would be any other limitations for claimant, Dr. Kravitz stated that another would be with respect to stress tolerance. Dr. Kravitz noted that, despite the Medical Source Statements by the nurse practitioner and the findings of the consultative psychologist on the recent consultative psychological evaluation (Exhibits 9F, 13F, 15F and 17F [(R. 461-62, 479-83, 502-07, 576-82)]), which showed that claimant would be unable to function even in a routine work setting, he opined that claimant could work, but not in an environment with high levels of stress, i.e., no frequent changes in work routine, and the jobs tasks should be routine, repetitive and predictable. He noted that he based his findings on the mental health treatment records from Valeo Behavioral Health as they presented a more mixed picture of claimant's ability to handle routine day to day stress.

(R. 23-24).

## C.   Analysis

As the court's quotation above from page twenty-two of the record reveals, the ALJ in fact discussed Dr. Garner's opinion regarding Plaintiff's physical limitations, despite Plaintiff's argument to the contrary. As the Commissioner argues, the ALJ concluded that Plaintiff's exertional limitations are more restrictive than did Dr. Garner. Moreover, the Commissioner argues that the reasons given by the ALJ to discount Dr. Garner's opinion that Plaintiff must lie down each day are supported by substantial evidence in the record. Plaintiff did not file a reply brief to answer the Commissioner's

argument, and does not argue that the ALJ's rationale in that regard is not supported by substantial record evidence.  Plaintiff has shown no error in the ALJ's evaluation of Dr. Garner's opinion regarding physical limitations.

However, the court's review of the record leads to a different conclusion regarding the ALJ's evaluation of Dr. Garner's opinion of Plaintiff's mental limitations.  The only discussion the ALJ provided concerning Dr. Garner's opinion of Plaintiff's mental limitations was her recognition that Dr. Garner reported in January 2007 that Plaintiff had mild depression (R. 25), and her finding that Dr. Garner's assessment "showed mostly 'not significantly limited' to 'moderately limited' for claimant in the various areas of [mental] functioning."  (R. 26) (citing Ex. 11F/2-3 (R. 474-75)).

In so far as it goes, the ALJ's finding is correct.  Dr. Garner opined that Plaintiff is "not significantly limited" in four of twenty mental abilities identified in the Medical Source Statement.  (R. 474-75).[1] He opined that Plaintiff is "moderately limited" in the remaining sixteen of the mental abilities identified.  As the ALJ's finding implies, Dr. Garner did not find that Plaintiff was "markedly limited" or "extremely limited" in any of the twenty mental abilities.  However, as Plaintiff implies, the ALJ did not accord specific weight to this opinion, did not provide any reason for the weight accorded, and did not specifically discuss any regulatory factors relevant to her inquiry in that regard.

---

[1]In Dr. Garner's "Medical Source Statement," mental abilities are numbered 1 through 19, but the court notes that there are two abilities numbered "3."  (R. 474-75).

12

Moreover, the ALJ's determination (that Plaintiff is limited by his mental impairments to job duties which are simple, repetitive, routine, and low in stress, which require no contact with the general public and only occasional contact with coworkers and supervisors, and where personal supervision is not constant) does not necessarily flow from Dr. Garner's finding of sixteen mental abilities which are "moderately limited." In Dr. Garner's Medical Source Statement, "moderately limited" is defined as "impairment levels are compatible with some, but not all, useful functioning." (R. 474). Dr. Garner's opinion that Plaintiff is "not significantly limited" in only four of twenty mental abilities (20 percent) but that Plaintiff's mental impairment levels are compatible with only "some useful functioning" in the remaining 80 percent of his mental abilities suggests that even though Plaintiff does not have "marked" or "extreme" limitation in any individual mental ability, his mental limitations when considered as a whole might be sufficiently extensive to preclude work, particularly in the areas of social interaction and adaptation, where Dr. Garner rated every mental ability as "moderately limited." (R. 475). This is an ambiguity which the ALJ did not discuss or explain. Dr. Garner is a treating source, whose opinion is worthy of particular deference even if it is not accorded controlling weight. Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). The ALJ must give sufficient reasons for discounting a treating source opinion. She did not do so here.

One might conclude from reading the decision at pages 23-24 of the record, as quoted above, that the ALJ accepted the opinion of the medical expert, Dr. Kravitz, with

regard to Plaintiff's mental impairments and credited that opinion over the opinion of Dr. Garner.  In fact, one might conclude that the ALJ accepted Dr. Kravitz's understanding of Dr. Garner's opinion--that Plaintiff is "functioning in the more 'moderate' range."  (R. 23).  However, as discussed above this understanding does not <u>necessarily</u> flow from Dr. Garner's opinion, and the ALJ must explain how she resolved this ambiguity and why she accepted Dr. Kravitz's understanding of Dr. Garner's opinion, if that is in fact what she did.

Moreover, an ALJ may not merely accept the opinion of a medical expert (a nonexamining source) over that of a treating source.[2]  As noted above, the opinion of a treating source is generally entitled to "particular weight," but the opinion of a nontreating source who only examined the claimant is not entitled to that sort of deferential treatment.  <u>Doyal</u>, 331 F.3d at 762-63.  However, even the opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources such as Dr. Kravitz, the medical expert here, or of other state agency practitioners who have merely reviewed the medical record.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).  In a case such as this where the opinion of a nonexamining source is inconsistent with the treating physician's opinion, the ALJ's task is to examine the nonexamining physician's testimony to see if it outweighs the treating physician's report, not the other way around.  Goatcher,  52 F.3d at 289-90.  He must then explain why he credited the nonexamining source's opinion over that of the treating source.  The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

Here, the ALJ has not made clear what weight she accorded to Dr. Garner's opinion regarding Plaintiff's mental limitations, and she certainly has not made clear the reasons for that weight.  In fact, the court finds little in the decision to indicate that the ALJ weighed Dr. Garner's mental limitations in accordance with the regulatory factors for weighing medical opinions.  Beyond the oblique statement that Plaintiff was seen by Dr. Garner in January 2007 and was reported to have mild depression, there is no specific acknowledgment that Dr. Garner was Plaintiff's treating physician, there is no mention of the length of treatment or frequency of examination, the nature and extent of the treatment relationship, the treatment provided or the kind of examination or testing performed. There is no mention whether Dr. Garner's opinion is supported by relevant evidence,

whether it is consistent with the record as a whole, or whether Dr. Garner is a specialist in the area upon which the opinion was rendered.

Perhaps most importantly, there is no discussion or relative weighing by the ALJ of the various medical opinions regarding Plaintiff's mental limitations.  With regard to mental impairments, the ALJ discussed the opinions of Dr. Kravitz, the psychological expert who testified at the second supplemental hearing; Dr. McKenna, a  psychologist who performed a mental status evaluation of Plaintiff in March 2007; Dr. Ohlde, a psychologist who performed a mental status exam for the Commissioner in October 2006; Dr. Garner; Ms. Koch, a nurse practitioner who provided mental health treatment at Valeo Behavioral Health; and Dr. Berg, a psychologist who examined Plaintiff and provided a consultation report for the Commissioner in March 2010.  (R. 22-28).  The ALJ did not state the weight she accorded Dr. Kravitz's opinion, but she found it "to be credible and consistent with the totality of the evidence" (R. 24), and she appears to have given it great weight and primarily relied upon it in assessing Plaintiff's mental RFC.

The ALJ summarized Dr. McKenna's opinion, but did not specify the weight to which she accorded it.  (R. 24).  She summarized Dr. Ohlde's opinion and noted that she had given it consideration, but accorded it "little weight."  (R. 25).  She noted that Dr. Garner had completed a Medical Source Statement regarding Plaintiff's mental impairments, but as discussed above, she did not specifically weigh the opinions therein and did not state the weight accorded to them.  (R. 26).  The ALJ stated that she had considered the opinions of Ms. Koch, but accorded them "little weight."  (R. 27-28).

Finally, the ALJ summarized Dr. Berg's opinions, and accorded them "little weight."  (R. 28).

The ALJ stated that she had considered all of the medical evidence, the medical opinions, and the opinions of Ms. Koch in reaching her RFC assessment.  (R. 27). Although the court will usually take an adjudicator at her word when she makes such a statement, the court finds little if any indication that the ALJ in this case engaged in relative weighing of the opinions discussed above, and there is no indication in the decision that the ALJ took into consideration the "treating physician rule" which generally accords greater weight and deference to the opinions of treating sources over the opinions of nontreating or nonexamining sources.  In this regard, it is particularly troubling to the court that all of the opinions to which the ALJ accorded "little weight" are at least in some measure mutually supportive and supportive of Dr. Garner's opinion. Dr. Garner is a treating source who has treated Plaintiff for a number of years.  While Ms. Koch is not an "acceptable medical source" and is therefore not a "treating source," she is nonetheless a mental healthcare provider who has treated Plaintiff for some time.  Dr. Ohlde and Dr. Berg are both nontreating sources who have personally examined Plaintiff. Each of these healthcare providers has a closer relationship to, and presumably a greater personal knowledge of Plaintiff than does Dr. Kravitz to whose opinion the ALJ appears to have accorded the greatest weight.  Yet, the ALJ provided no relative weighing of the opinions and no explanation how Dr. Kravitz's opinion should  outweigh the opinion of

Dr. Garner, especially in light of the support provided to Dr. Garner's opinion by the other opinions.

The court is aware that weighing opinions of medical sources involves more than counting the opinions on each side of an issue and putting into effect the "majority" opinion.  Moreover, the court does not intend to assert (even in this case) that the opinion of a nonexamining medical expert can never outweigh the opinion of a treating source even when it is also supported to some extent by other opinion evidence.  However, such a result is counterintuitive on its face, and requires citation to record evidence and an explanation of how that evidence supports the conclusion.  The ALJ did not do so here.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 11th  day of June 2012, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

18